## IN UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

No. 22-12516

### CARLUS L. HAYNES
**Plaintiff – Appellant,**

v.

### CITY OF ORLANDO, MARTHA LEE LOMBARDY,
### O'CONNOR and O'CONNOR, LLC, and DENNIS O'CONNOR
**Defendants - Appellees.**

**On Appeal from the U.S. District Court
Middle District of Florida, Orlando Division
Roy B. Dalton, Jr.
District Court Docket No. 6:22-cv-372-RBD-EJK**

### <u>APPELLANT'S INITIAL BRIEF</u>

**Carlus Leandrus Haynes, Esquire
Haynes and Laurent, PA
8615 Commodity Circle, Unit 6
Orlando, FL 32819
Counsel for the Appellant
Champ@fighting4ulaw.com**

i

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT OF APPELLANT

THE UNDERSIGNED COUNSEL hereby enters this certificate of interested persons and corporate disclosure statement, pursuant to the Federal Rule of Appellate Procedure 26 and the Eleventh Circuit Court of Appeals, and requests this document be attached as part of the record.

1.    The name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in the outcome of this action – including subsidiaries, conglomerates, affiliates, parent corporations, publicly traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case:

      a.  Carlus Haynes, Appellant;

      b.  Carlus L. Haynes, Esq., Pro Se Counsel for Appellants';

      c.  Haynes Law, P.A., Counsel for Appellant;

      d.  City of Orlando, Appellee;

      e.  Martha Lee Lombardy, Appellee;

      f.  O'Connor and O'Connor, LLC, Appellee;

      g.  Dennis O'Connor, Appellee;

        h.  Derek Angell, Counsel for Appellee; and

        i.  Roper P.A., Counsel for Appellees;

2.     The name of every other entity whose publicly traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

        a.  None;

3.     The name of every other entity which is likely to be an active participant in the proceedings, including the debtor and members of the creditors' committee (or twenty largest unsecured creditors):

        a.  Not applicable.

4.     The name of each victim (individual and corporate) of civil and criminal conduct alleged to be wrongful, including every person who may be entitled to restitution:

        a.  Carlus Haynes, Appellant

[INTENTIONALLY LEFT BLANK]

## <u>STATEMENT OF ORAL ARGUMENT</u>

Plaintiff/Appellant, Mr. Carlus L. Haynes, (*pro se* and professionally), does believe oral argument pursuant to ***Federal rules of Appellate Procedure 34(a)*** and ***Eleventh Circuit Rule 34-3*** is required where issue presented in this appeal is a matter of first impression on a cause of action apparently never brought in the Middle District of Florida or in the Eleventh Circuit.

In addition, in Counsel's humble opinion, this is an issue of great public importance in that it involves constitutional and statutory rights under the ***42 U.S.C. §1983*** and the Hallowed ***14th Amendment*** to our Great Constitution, and the rights guaranteed by it, and Oral Argument could assist this Court in understanding the novel but yet complex sub-issues and legal argument. Where the underlying cause of action happens often in both criminal and civil trials within the Florida (in counsel's anecdotal experience), the actual statute of limitations to be ascribed to this cause of action is of great public importance.

Respectfully submitted,

/s./ *Carlus L. Haynes*

CARLUS L. HAYNES, ESQUIRE
Florida Bar Number: 0935611
8615 Commodity Circle, Ste. 6
Orlando, Florida 32819
T: (407) 246-0077/ F: (407) 246-0078
Email: champ@fighting4ulaw.com
Attorney for Appellants

# TABLE OF CONTENTS

**Page**

**CERTIFICATE OF INTERESTED
PERSONS AND CORPORATE
DISCLOSURE STATEMENT OF APPELLANT**………………………………..ii

**STATEMENT OF ORAL ARGUMENT**..………………………………………..iv

**TABLE OF CONTENTS**..………………….........…………………………….v

**TABLE OF AUTHORITIES/CITATIONS**………………………..…………..vii

**JURISDICTIONAL STATEMENT**…………………………………………....xi

**STATEMENT OF ISSUES...**.............................................................…...1

**STATEMENT OF THE CASE**…………………………..………………...…1

**Procedure Posture of the Case**.……………………………………………...1

**Relevant Facts Regarding the Cause of Action
And Timing of Filing the Complaint**………………………………………..3

**SUMMARY OF ARGUMENT**…………………………………………….....6

**ARGUMENT**………………………………………………………..passim

I.     STANDARD OF REVIEW…………………………………………….7

II.    DISTRICT COURT APPLIED WRONG STANDARD
     IN DETERMINING THE CORRECT START DATE
     OF THE STATUTE OF LIMIATIONS……………………………….....7

A. Where the Issue Before the District Court Was a Matter of First Impression, the Court Should Have Denied the Defendants Motion to Dismiss and/or Motion for Summary Judgment In Favor of Deciding the Case on the Merits.................................................9

B. Plaintiff Provided Authority for Applying Statute of Limitation Date Commencing From Entry of Order on Appeal Affirming New Trial.................................14

C. The Commencement Date of the Statute of Limitation for Causes of Action Arising Out of a Previous Litigation is not the Date the Complained Act Occurred.................................................16

III. IT IS WELL ESTABLISHED THAT THE STATUTE OF LIMITATIONS ON CAUSES OF ACTIONS ARISING FROM STATE LAW LITIGATION START AT THE LATEST POSSIBLE DATE.................................................18

IV. PUBLIC POLICY CONSIDERATIONS THAT FAVOR REVERSAL.................................................20

**CONCLUSION**.................................................21

**CERTIFICATE OF SERVICE**.................................................22

**OTHER CERTIFICATES**.................................................22

# TABLE OF AUTHORITIES/CITATIONS

<u>FEDERAL CASES</u>

### *UNITED STATES SUPREME COURT*

*Gonzalez v. Thaler,*
565 U.S. 134, 132 S. Ct. 641 (2012)…………………………………………………...18

*O'Gilvie v. United States,*
519 U.S. 79, 117 S. Ct. 452 (1996)…………………………………………………….10

### *ELEVENTH CIRCUIT COURT OF APPEAL*

*Blue Cross & Blue Shield v. Sanders,*
138 F.3d 1347 (11th Cir. 1998)…………………………………………………...16

*Ctr. for Biological Diversity v. Hamilton,*
453 F.3d 1331 (11th Cir. 2006)……………………………………………………….7

*Knight v. Schofield,*
292 F.3d 709 (11th Cir. 2002)……………………………………………………….19

*La. Grasta v. First Union Sec., Inc.,*
358 F.3d 840 (11th Cir. 2004)……………………………………………………….20

*Lovett v. Ray,*
327 F.3d 1181 (11th Cir. 2003)……………………………………………………….7

*Mitchell v. Brown & Williamson Tobacco Corp.,*
294 F.3d 1309 (11th Cir. 2002)……………………………………………………….9

*Mullinax v. McElhenney,*
817 F.2d 711 (11th Cir. 1987)……………………………………………………….15

*Perez v. Wells Fargo N.A.,*
774 F.3d 1329 (11th Cir. 2014)……………………………………………………….7

*Rozar v. Mullis,*
85 F.3d 556 (11th Cir. 1996)……………………………….............................7, 8

*Shipner v. E. Air Lines, Inc.,*
868 F.2d 401 (11th Cir. 1989)……………………………………………...9

*Stafford v. Thompson,*
328 F.3d 1302 (11th Cir. 2003)…………………………………………...19

*Steed v. Head,*
219 F.3d 1298 (11th Cir. 2000)…………………………………………...19

*Surtain v. Hamlin Terrace Found,*
789 F.3d 1239 (11th Cir. 2015)………………………………………….9

*Uboh v. Reno,*
141 F.3d 1000 (11th Cir. 1998)………………………………….………7

## OTHER CIRCUIT COURT OF APPEALS

*Kapral v. United States,*
166 F.3d 565 (3rd Cir. 1999)……………………………………………19

*Paulson v. United States,*
78 F.2d 97 (10th Cir. 1935)……………………………………………….10

*Sameric Corp. v. City of Phila.,*
142 F.3d 582 (3rd Cir. 1998)……………………………………………15

*United States v. Carter,*
906 F.2d 1375 (9th Cir. 1990)…………………………………………...10, 11

*United States v. Gadsen,*
332 F.3d 224 (4th Cir. 2003)…………………………………………....18

*United States v. Greene-Thapedi,*
398 F.3d 635 (7th Cir. 2005)…………………………………………...10

## DISTRICT COURT CASES

*Basemore v. Abraham,*
2006 WL 120035 (E.D. Pa. Jan. 11, 2006).........................................1, 6, 14

*United States v. Hoskie,*
144 F. Supp. 2d 108 (D. Conn. 2001)...................................................18

### **Federal Statutes/Rules**

*42 U.S.C. §1983*...........................................................................passim

*26 U.S.C. § 6532(b)*........................................................................12

*28 U.S.C. § 2254*............................................................................18

*29 U.S.C. § 1132(a)(3)*....................................................................16

*42 U.S.C. § 1985*........................................................................15

*42 U.S.C. § 1988*..........................................................................21

*I.R.C. § 6532(b)*.........................................................................12

Fed. R. App. P. 32(a).....................................................................22

Fed. R. App. P. 27(d)(2)(A).............................................................22

*Fed. R. Civ. P. Rule 15*...................................................................9

*Fed. R. Civ. P. Rule 11*...................................................................2

## STATE CASES

### *FLORIDA SUPREME COURT CASES*

*Gilbride, Heller, & Brown, P.A. v. Watkins,*
783 So. 2d 224 (Fla. 2001)……………………………………………………..17

*Schreiber v. Rowe,*
814 So. 2d 396 (Fla. 2002)……………………………………………………..16

*Silvestrone v. Edell,*
721 So. 2d 1173 (Fla. 1998)…………………………………………………..16, 17

### *DISTRICT COURT OF APPEAL CASES*

*Chapman v. Garcia,*
463 So. 2d 528 (Fla. 3rd DCA 1985)…………………………......................................17

*Eldred v. Reber,*
639 So. 2d 1086 (Fla. 5th DCA 1994)………………………………………………16

*Watkins v. Gilbride Heller & Brown, P.A.,*
754 So. 2d 759 (Fla. 3rd DCA 2000)………………………………………………17

*Wilson v. Clark,*
414 So. 2d 526 (Fla. 1st DCA 1982)…………………………………………………...17

## <u>STATEMENT OF JURISDICTION</u>

Appellant initiates this action pursuant to *42 U.S.C. §1983*, alleging violations of his rights under Florida law and United States Constitution. The district court had jurisdiction under *28 U.S.C. § 1331*. The district court entered an order on July 1, 2022 granting the Defendants' Motion to Dismiss and/or Motion for Summary Judgment (Doc. 17). Appellants filed a timely notice of appeal on July 31, 2022. (Doc.20) Pursuant to *28 U.S.C. § 1291*, this Court has jurisdiction to consider the appeal of the final order.

## STATEMENT OF THE ISSUES

1. Whether the District Court Erred in Determining as a Matter of First Impression that the Statute of Limitations Began to Run at the Earliest Possible Date, Thus Prohibiting the Cause of Action From Being Decided on the Merits.

## STATEMENT OF THE CASE

### Procedural Posture of the Case

For purposes of this appeal, counsel asserts that the entire statement of the case is contained in (**doc.1),** the complaint, which was filed on February 18, 2022; and the order granting the Defendants' Motion to Dismiss (**doc.17**), rendered on July 1, 2022, where the District Court found as a matter of law that the complaint was untimely filed where it found that the Statute of Limitations began to run at the jury selection in the underlying matter in 2017. (**doc.17, p.4**).

This was an adoption of the Defendants' position contained in Defendants' Motion to Dismiss and/or Motion for Summary Judgment. (**doc.12, pp.6-7**). However, the district court failed to accept the holding in *Basemore v. Abraham*, No. 05-820, 2006 WL 120035 (E.D. Pa. Jan. 11, 2006) as persuasive authority as presented in the Appellant's/Plaintiff's, Carlus L. Haynes' Response In Opposition To Defendants', City Of Orlando, Martha Lee Lombardy, O'Connor and O'Connor,

LLC, and Dennis O'Connor Motion to Dismiss.  The district court broadly applied the general knew or should have known standard to find the complaint was untimely filed.  (**doc.17, p.3**).

Based on prevailing on their Motion to Dismiss and/or Motion for Summary Judgment, the City of Orlando filed a Motion For Rule 11 Sanctions claiming the complaint filed was frivolous. (**doc.18**) The undersigned filed his Response In Opposition To Motion For Rule 11 Sanctions on July 29, 2022. (**doc.19**)

Counsel then filed a notice of appeal on July 31, 2022, (doc.20), and then filed a Notice of Appearance; Certificate of Interested Persons; Civil Appeal Statement, Transcript Order Form; and Stock Tickler on August 17, 2022.  The Clerk apparently sent an expedited briefing schedule on August 3, 2022, setting the deadline to file the initial brief on or before September 12, 2022.  This briefing schedule had not appeared on the docket where counsel periodically checked, knowing that one should have been issued.  In fact, it was not until September 20, 2022 when counsel received the email from the Clerk of Eleventh Circuit Court of Appeal notifying counsel of the dismissal, and calling the Clerk's Office, did counsel become aware of the past due deadline to file the initial brief.

On September 22, 2022, the district court entered an order denying the City of Orlando's Motion for Rule 11 Sanctions.  Lastly, counsel completed the initial

brief and filed his Motion to Reinstate Appeal and Accept Initial Brief as Timely Filed on September 27, 2022.

### Relevant Facts Regarding the Cause of Action
### And Timing of Filing the Complaint

On or about November 13, 2017, during jury selection in *Carlus Haynes v. City of Orlando*, Case No. 2014-CA-10413-O, counsel for Defendant, Dennis O'Connor and Marth Lee Lombardy used preemptory challenges to strike African American females who were of a similar age and similar occupation as Caucasian females that Mr. O'Connor and Mrs. Lombardy accepted on behalf of the City. Based on this apparent discriminatory practice, Plaintiff's counsel raised a "*Baston* Challenge" and requested the defense provide a race neutral reason for the challenge.

The trial court requested that Mr. O'Connor provide a race neutral reason for the challenge at which time he stated on at least three separate occasions that the juror's age caused him concern. During the colloquy between counsel and the trial court, the judge admonished counsel that she could not allow him to use an "age discriminatory reason" to establish a "race-neutral" reason. Then counsel added that the juror's occupation was problematic in that this case involved a "back injury" and prospective juror #10 would be more sympathetic to the Plaintiff. In addition, Mr. O'Connor attempted to use his "experience" as a basis for the challenge and asked the Court to accept these latter reasons as a race neutral reason to permit the challenge.

The trial court still expressed concern and gave Plaintiff's counsel a chance to respond.  It was noted that "prospective juror #2", who had been accepted by the Defense, was retired and had a similar occupation in that she was a "server" for Marriott hotels.  The trial court did not find the argument persuasive and indicated that it had to accept Mr. O'Connor's representation at face value without ascertaining if the proffered reason was genuine.

Trial commenced on November 13, 2017 and the jury returned a verdict in favor of the City on November 14, 2017.  On November 22, 2017, Plaintiff filed a Motion for a New Trial.  Plaintiff's Motion for New Trial was heard on February 23, 2018.  There Mrs. Lee Lombardy argued that the City and Mr. O'Connor had not been discriminatory in striking African Americans where they accepted prospective (#5), Norma Quiles Vasquez who was Hispanic.  The trial court rejected the City's contentions and granted Plaintiff's Motion for New Trial on February 27, 2018. O'Connor and O'Connor, LLC, and the City, by and through attorney Derek J. Angell 0073449, filed a Motion for Reconsideration on March 2, 2018 that was promptly denied on March 20, 2018 by Judge Renee Roach.

Defendants filed a Notice of Appeal on March 26, 2018 still contesting the granting of the motion for new trial.  The City filed its initial brief on June 15, 2018.  The Appellee's/Plaintiff's Answer Brief was filed on July 15, 2018.  Defendant/Appellant City of Orlando's Reply Brief was filed August 23, 2018.  On

4

February 5, 2019, the Fifth District Court of Appeal affirmed the lower court's decision ordering a new trial. On February 25, 2019, the Fifth District Court of Appeal issued its Mandate. *Carlus Haynes v. City of Orlando*, Case No. 2014-CA-10413-O, was re-noticed for trial. (**Doc. 1, pp.6-9**) The case was eventually resolved short of trial.

The complaint based on discrimination in the jury selection process was filed on February 18, 2022, and commenced an action pursuant to *42 U.S.C. § 1983* in the Middle District of Florida.

[Remainder of Page Intentionally Blank]

## SUMMARY OF ARGUMENT

The district court applied the wrong standard to determine the commencement date that the Statute of Limitations began to run.  First, where it was a matter of first impression, the district court should have applied the less stringent date in determining when the Statute of Limitations would expire.

Next, the district court erred in finding *Basemore v. Abraham*, No. 05-820, 2006 WL 120035 (E.D. Pa. Jan. 11, 2006) inapplicable, where neither the Defendants nor the district court cited any cases remotely addressing the applicable Statute of Limitations in a *42 U.S.C § 1983* cases arising from discrimination in the jury selection process.

Thirdly, the district court erred in not applying the Statute of Limitations start date as recognized by Florida law for causes of actions arising out of litigation.  Next, although not cited initially by Appellant, the district court erred as a matter of law where authority from the United Supreme States Court and various Circuit Courts of Appeal support a finding that for causes of actions arising from litigation, the Statute of Limitations does not begin to run until the last date in which the action can be affirmed or overturned by way of an appeal.

Lastly, where this particular Statute of Limitation for an atypical cause of action has never been addressed within the District or the Circuit, the district court erred in entering judgment on the pleadings against the Plaintiff/Appellant where on

the face of the pleadings, it cannot be said that Defendants/Appellees were entitled to relief as a matter of law.

## **ARGUMENT**

### I.    STANDARD OF REVIEW

As recognized by this Court, the Panel conducts an "independent[] review [of] the district court's ruling concerning the applicable statute of limitations." *Lovett v. Ray,* 327 F.3d 1181, 1182 (11th Cir. 2003). *See also Center for Biological Diversity v. Hamilton,* 453 F.3d 1331, 1334 (11th Cir. 2006) (citations omitted).("We review the district court's interpretation and application of statutes of limitations de novo.") Equally, whereas the district court's order entered a judgment on the pleadings, the Court also conducts a *de novo* review of the order to determine error. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

### II.    DISTRICT COURT APPLIED WRONG STANDARD IN DETERMINING THE CORRECT START DATE OF THE STATUTE OF LIMITATIONS

It is well-established that on appeal, the Circuit Court must independently review the district court's ruling concerning the applicable statute of limitations. *Uboh v. Reno*, 141 F.3d 1000, 1002 (11th Cir. 1998). Federal courts apply their forum statute of limitations for personal injury actions to actions brought pursuant to *42 U.S.C. § 1983*. *Id.* However, Federal law determines when the statute of limitations begins to run. *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996). As a

general proposition, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id*. at 561-62 (internal marks omitted).

In the present case, the earliest counsel could be expected to know that the unlawful discrimination in the jury selection process took place was when the trial court entered its order granting a new trial. Up to that point, all Plaintiff had was an argument or belief that had been rejected by the trial court when raised during voir dire. To suggest that counsel "knew" discrimination had taken place to start the running of the Statute of Limitations, runs afoul of sound principles of *stare decisis* and *res judicata*.

For consideration, if a trial court denies a criminal defendant pretrial release, but the criminal defense attorney knows the court misapplied the law, can the attorney compel the jail to release the criminal defendant on that belief? Or does the criminal defense attorney need an order from a reviewing court affirming the belief that the criminal defendant is entitled to release/relief before that defendant will be released?

[Remainder of Page Intentionally Blank]

A. <u>Where the Issue Before the District Court Was a Matter of First Impression, the Court Should Have Denied the Defendants' Motion to Dismiss and/or Motion for Summary Judgment In Favor of Deciding the Case on the Merits.</u>

Application of several procedural rules under the ***Federal Rules of Civil Procedure*** dictate that district courts apply them in a manner that supports a general policy that cases in controversy should be decided on the merits and not barred by procedure. In applying ***Fed.R.Civ.P. 15***, this Circuit has instructed district courts to generally exercise their discretion in favor of allowing amendments in order to reach the merits of a dispute. *See Shipner v. E. Air Lines, Inc.,* 868 F.2d 401, 406-07 (11th Cir. 1989) (explaining that Rule 15's policy of "liberally permitting amendments to facilitate [the] determination of claims on the merits circumscribes the exercise of the district court's discretion").

Also, in considering the end of litigation via default judgment, this Court has considered "default judgments to be a 'drastic remedy' that should be used 'sparingly' when no other forms of relief are available. *Mitchell v. Brown Williams Tobacco Corporation*, 294 F.3d 1309, 1316-17 (11th Cir. 2002) (quotation omitted). Likewise, this Court has noted defaults are disfavored and there is a "strong policy of determining cases on their merits". *Surtain v. Hamlin Terrace Found*, 789 F.3d 1239, 1244-45 (11th Cir. 2015). This Court has instructed that default is proper only when the pleadings clearly demonstrate entitlement to relief, similar to a showing necessary to survive a motion to dismiss for failure to state a claim. *Id.* at 1245.

The imposition of the earliest possible Statute of Limitations date in the present case operated as a default judgment against the Appellant and prevented a determination on the merits as to whether the Defendants discriminated against prospective jurors based on race, thus violating the Plaintiff's due process rights. The start date was not plain from the record where there were arguably four different dates by which the Statute of Limitations period could be computed.

Liberally construing the Statue of Limitations in favor of continuing litigation is the favored position, especially where the Statute of Limitations is not clearly established. If the standard "clearly established law" can prevent a plaintiff from redressing injury from a *§ 1983* defendant, certainly this same consideration can cut in the opposite direction to prevent a *§ 1983* defendant from evading liability.

This proposition of law was applied in *United States v. Greene-Thapedi*, 398 F.3d 635 7th Cir. 2005) where our Sister Circuit was called upon to decide on seemingly a matter of first impression whether the Plaintiff (the United States government) had filed a complaint to recover an IRS overpayment from a duplicate refund check sent to defendant in error.[1]

---

[1] Counsel states "seemingly" whereas the opinion notes that "[a]lthough the Supreme Court has not addressed the precise question posed in this appeal, Greene-Thapedi points to dicta in *O'Gilvie v. United States*, 519 U.S. 79, 136 L. Ed. 2d 454, 117 S. Ct. 452 (1996), to support her argument that the date of receipt governs", however the Court noted that in the Supreme Court decision, "The Court did not consider, however, whether the date of the taxpayer's receipt was the *latest* possible time for the statute to begin

For three years the defendant failed to file income tax returns in time. *Id.* at 635. "After processing her multiple late returns, the Internal Revenue Service (IRS) issued her a refund check in the amount of $17,028." *Id*. The IRS sent the refund as a result of a processing error in that her tax returns were processed out of order. *Id.* at 636. Once Green-Thapedi received the check she did not initially negotiate the check because she wanted to verify if it was accurate. *Id*.

After speaking with the IRS processing center and being reassured that the refund was legitimate, the defendant cashed the check. "Records from the Treasury Department show that payment on the check occurred on December 21, 1999." *Id*. at 636-37. Only after, did the IRS see the error of their ways and sought return of the unmerited funds. *Id*. at 637. After several unsuccessful attempts "to recover the funds from Greene-Thapedi, the government filed a complaint in federal court on November 28, 2001, *two years and one day* after Greene-Thapedi received the check, but one year and 342 days after the payment was completed." *Id.*, *emphasis added*.

The Court noted that the statute upon which the complaint was based governed "suits to recover erroneous tax refunds provides that, absent fraud or misrepresentation, an action must be brought within two years of 'the making of the

---

running." *Id.* at 638. *See also 639*, citing *Paulson v. United States*, 78 F.2d 97 (10th Cir. 1935) and *United States v. Carter*, 906 F.2d 1375 (9th Cir. 1990).

refund.' 26 U.S.C. § 6532(b)."  The issue for the district court's consideration was which action constituted "the making of the refund".

Defendant "Greene-Thapedi argued that her refund was 'made' on November 27, 1999, when she received the check in the mail and therefore "the government's suit was timebarred by the statute of limitations because it was filed on November 28, 2001, one day after the two-year limitations period had run." *Id*.  The government's position to the contrary, was that the "'making of [a] refund' occurs when the Treasury authorizes the refund payment and the check clears the relevant Federal Reserve Bank."  *Id.*

The Court, in applying a *de novo* standard of review, opined that "as a matter of first impression in this circuit" it must decide "what act triggers the two-year statute of limitations in a suit brought by the government pursuant to Section 6532(b)." While the parties sought imposition of their respective dates, the Court noted two additional dates that could constitute the making of the refund, those being "the date when the check was prepared, which appears on the face of the check, or the date when the IRS mailed the check." *Id.*

In reaching Its' holding, the Court juggled apparent precedent or dicta from the United States Supreme Court and two Sister Circuits, with the general proposition that the Statute of Limitations should be applied in favor of the Plaintiff Government, as well as in a manner that provided a definitive date.  In selecting the

last possible date that could be definitively established, the Court held that "the two-year statute of limitations began to run on December 19, 1999, when the Treasury department records show that Greene-Thapedi received payment on the refund check. The government's suit, which was filed on November 28, 1999, was thus not time barred." *Id*. at 639.

In the case *sub judice*, the district had four potential commencement dates, and only the first, the one ultimately chosen, was a date of uncertainty.  In selecting the date where the complained act occurred, where the trial judge ruled against Haynes, there was no certainty that a due process violation had occurred.  However, each of the remaining potential dates had an increased certainty that a violation had occurred.

When the motion for new trial was granted, at least the trial court was convinced that the Defendant O'Connor had not demonstrated his proffered reason for excluding the African American juror was genuine.[2]  Not satisfied with the ruling, the Defendant filed a notice of Appeal, and the Fifth District Court of Appeal entered an order on February 5, 2019 affirming the trial court's granting of the new

---

[2] Defendant will likely argue the merits of the genuineness was never reached and the new trial was granted and the appeal affirmed on procedural grounds.  But this Court well knows that where the record demonstrates a genuine non-pretextual reason for the preemptory challenge, even if the trial court failed to follow proper procedures in addressing the "*Baston* Challenge", the error will be deemed harmless.

trial.  However, where the Defendant/State Court Appellant still had the option to appeal that order, the operable commencement date of the Statute of Limitations is the date the mandate was issued, which was February 25, 2019.

The finding that the Statute of Limitations began to run on the day of *voir dire* vitiates against recognized policy within this Circuit to address the merits of an action when possible.  Because there are three additional start dates in which to compute the Statute of Limitations, the Appellant prays upon this Court to reverse the order of the district court and remand for further proceedings.

B. Plaintiff Provided Authority for Applying Statute of Limitation Date Commencing From Entry of Order on Appeal Affirming New Trial

Ironically, neither the Defendants nor the district court cite to any Eleventh Circuit cases addressing the Statute of Limitation for the specific claim raised in the complaint, further supporting that this issue and the applicable Statute of Limitations are matters of first impression in the Eleventh Circuit.  Counsel cited *Basemore v. Abraham,* No. 05-820, 2006 U.S. Dist. LEXIS 1121; 2006 WL 120035 (E.D. Pa. Jan. 11, 2006), (**doc.15, p. 8**) in support of the argument that the Statute of Limitations begins from the date the new trial is granted or the appeal is final (or the time for filing an appeal has elapsed), where the action complained upon would not be ripe for litigation until the Appellate Court has decided the issue or the state court Defendant/Appellant had waived the right to appeal.

In *Basemore,* the defendant raised a similar challenge as the City of Orlando did in the case at bar. There the court determined that the inmates *§ 1983* and *§ 1985* claims regarding discrimination in the jury selection process of his criminal trial began to accrue "when the plaintiff knew or should have known of the unconstitutional jury selection." *Id*. at *5, citing *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3rd Cir. 1998). The court found:

> [t]he latest the plaintiff could have reasonably known that the jury in his 1988 trial was selected in violation of the constitution was on December 19, 2001, when he claims he was granted a retrial because of constitutionally inadequate jury selection during his 1988 trial. The plaintiff did not file this complaint until February 22, 2005, well after the applicable limitations period had run under §§ 1983, 1985 or 1986.

*Id*. at 6. *See also Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).

For some inexplicable reason, the district court rejected the rationale in *Basemore*, but provided no authority to dispel *Basemore*'s reasoning or holding. Counsel avers that the learned district court in *Basemore* utilized a common sense approach to determine the appropriate Statute of Limitations for a rare cause of action. Similarly, the undersigned requests that this Honorable Court deem that the Statute of Limitations was not expired where the time did not begin to run, at the earliest, until the state trial court rendered the order granting a new trial.

C. <u>The Commencement Date of the Statute of Limitation for Causes of Action Arising Out of a Previous Litigation is not the Date the Complained Act Occurred.</u>

When determining the applicable Statute of Limitation for a rare cause of action as a matter of first impression, the district court was required to apply the Statute of Limitation from a similar cause of action. *See Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1357 (11th Cir. 1998) (applying a six year statute of limitation because holding that, as a matter of first impression, that "a fiduciary's action to enforce a reimbursement provision pursuant to 29 U.S.C. § 1132(a)(3) is most closely analogous to a simple contract action brought under Alabama law."). In the case *sub judice*, the district court should have applied the "commencement date" applied to legal malpractice lawsuits, where both causes of action arise out of an attorney performance at trial and are similar in nature, like this Court did in *Sanders*.

In doing so, the only logical ruling would have been that the Statute of Limitations does not begin to run until a new trial is granted or the appeal (if taken) is final. *See Silvestrone v. Edell*, 721 So. 2d 1173 (Fla. 1998) and *Eldred v. Reber*, 639 So. 2d 1086, 1088 (Fla. 5th DCA 1994) ("for purposes of determining when the statute of limitations begins to accrue in a litigational malpractice action when the underlying action is appealed, the time begins to accrue when the appellate decision is 'rendered'…). *See also Schreiber v. Rowe,* 814 So. 2d 396, 398 (Fla. 2002) (in

determining when the Statute of Limitations begins for a legal malpractice claim deriving from criminal prosecution, the court held "that the statute of limitations in a malpractice action does not commence until the criminal defendant has obtained final appellate or postconviction relief."）

The Florida Supreme Court, in *Gilbride, Heller, & Brown, P.A. v. Watkins*, 783 So. 2d 224 (Fla. 2001) held that for legal malpractice claims, the Statute of Limitation begins to run when the final appeal has concluded. The Court stated:

> We agree with the court below that, for the purposes of determining when the limitations period begins to run, "a final judgment is not final until a timely filed appeal to, or petition for review by, the supreme court is resolved." *Watkins, 754 So. 2d at 762. See also Chapman v. Garcia, 463 So. 2d 528, 529 (Fla. 3d DCA 1985)* ("[U]ntil the Florida Supreme Court resolves the issue if further review is sought--the question has not been resolved to finality."); *Wilson v. Clark, 414 So. 2d 526, 530 (Fla. 1st DCA 1982)* ("[A]n action continues to have life . . . until a timely filed petition for review in the Florida Supreme Court is acted upon"). This conclusion is consistent with the purposes of the bright-line rule announced in <u>Silvestrone</u>: to provide certainty and reduce litigation concerning when the statute starts to run. See *721 So. 2d at 1176*. Accordingly, we approve the result below.

*Gilbride*, at 225-226.

Where legal malpractice cases are akin to the cause of action raised in the complaint below, the Appellant respectfully requests that that this Honorable Court apply the same commencement date as in legal malpractice cases and reverse the

district court's order where on a matter of first impression it found that the Statute of Limitations had run.

### III. IT IS WELL ESTABLISHED THAT THE STATUTE OF LIMITATIONS ON CAUSES OF ACTIONS ARISING FROM STATE LAW LITIGATION START AT THE LATEST POSSIBLE DATE

It has been well established by the United States Supreme Court, the Eleventh Circuit, and various other Circuit Courts of Appeals that in federal *habeas corpus* petitions, the Statute of Limitations does not begin to run until the mandate is issued from the state appellate court or the time to file an appeal has expired. To state differently, the Statute of Limitations does not begin until the last possible time in the litigation process.

In keeping with the "finality" theme, ***28 U.S.C. § 2254*** (which cause of action has its' origin in the criminal area much like actions brought pursuant to ***42 U.S.C. § 1983***) establishes the Statute of Limitations for filing a *habeas petition* to one year, which begins to run "'from the latest of' four specified dates.'" *Gonzalez v. Thaler*, 565 U.S. 134, 132 S. Ct. 641, 652 , & n.9 (2012*). See also similarly, United States v. Gadsen*, 332 F.3d 224, 229 (4th Cir. 2003) (holding that "the federal statute of limitations begins running when the state court conviction is conclusively invalidated") and *United States v. Hoskie*, 144 F. Supp. 2d 108, 111 (D. Conn. 2001) (holding that "the one-year statute of limitations starts to run on the date the state

convictions are vacated, not an earlier date when the defendant discovered the facts forming the basis for the attack on the state convictions.")

> In *Kapral v. United States*, the Court of Appeals for the Third Circuit held:

> [A] judgment of conviction becomes final within the meaning of §2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires. If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired.

166 F.3d 565, 577 (3rd Cir. 1999).  See also *Stafford v. Thompson*, 328 F.3d 1302, 1304 (11th Cir. 2003) ("The statute of limitations for federal habeas corpus filing purposes therefore clearly tolled from October 24, 2000, the day of the filing of the second state habeas corpus petition to April 9, 2001, the last day of which Stafford could have timely appealed the state court's denial of that petition to the Georgia Supreme Court."); *Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002) (reversing dismissal *habeas petition* as untimely where limitations period should have been equitably tolled until defendant received notice from state court of final disposition of case; he had acted diligently in pursuing remedies.); and *Steed v. Head*, 219 F.3d 1298 (11th Cir. 2000) (Statute of Limitations for filing of federal *habeas corpus* petition was not tolled for the period of time a defendant could have petitioned the

United States Supreme Court for *certiorari* review of the denial of state *habeas corpus* relief.)

Again, the Appellant presents another line of cases that demonstrate a consistent direction of reasoning regarding the start date of a Statute of Limitations. Assuming *arguendo* that the district court below is correct, then the line of reasoning in *habeas corpus* petitions as well as in legal malpractice cases is wrong.

IV.    PUBLIC POLICY CONSIDERATIONS THAT FAVOR REVERSAL

In an "atypical" cause of action where the applicable Statute of Limitations has never been established or addressed, it was inappropriate for the district court to rule as a matter of law, that the pleadings demonstrated the Defendant has established an affirmative defense, that being that the complaint was barred by the Statute of Limitations. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("A statute of limitations bar is an affirmative defense and … plaintiffs are not required to negate an affirmative defense in their complaint.")

In the current case, it cannot be said that the district was provided a "clear" commencement date for accrual of time to bar the complaint based on the Statute of Limitations. Notwithstanding the undersigned's sincere belief that the district court got it wrong, the face of the complaint presents three to four possible dates to calculate the Statute of Limitations. Under this guise, public policy favors allowing the case to be addressed on the merits and allowing this Court to ultimately

determine how to apply the Statute of Limitations on this matter of first impression, in the event the Plaintiff prevailed.

## <u>CONCLUSION</u>

THEREFORE, Appellant prays upon this Honorable Court to establish that the applicable Statute of Limitations for a *42 U.S.C. § 1983* cause of action deriving from discrimination in the jury selection process commences at the last possible time in the litigation process.  In this particular case, the Appellant respectfully requests that the order of the district court be reversed and remanded on the ground that the Statute of Limitation DID NOT COMMENCE IN 2017, but rather at the time the Fifth District Court of Appeals rendered its' order or issued its' mandate.

WHEREFORE, the Appellant respectfully requests the above stated relief, reasonable attorney fees pursuant to *42 U.S.C. § 1988* and any other remedy this Court deems lawful, equitable and just.

[Remainder of Page Intentionally Blank]

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 27th day of September, 2022 I electronically filed the (21pg. excluding certificates) Appellants' Initial Brief as attachment A to the Appellant's Motion to Reinstate Appeal, with the United States Court of Appeals for the Eleventh Circuit and emailed a copy of said motion to counsel for the Appellees Derek J. Angell, Esq., dangell@roperpa.com, 2707 East Jefferson Street, Orlando, FL 32803.

Respectfully submitted,

HAYNES LAW, P. A.

_____/s./ *Carlus L. Haynes*_____
CARLUS L. HAYNES, ESQUIRE
Florida Bar Number: 0935611
8615 Commodity Circle, Unit 6
Orlando, Florida 32819
T: (407) 246-0077/ F: (407) 246-0078
Email:  champ@fighting4ulaw.com
Attorney for Appellants

## <u>CERTIFICATE OF FONT AND WORD/PAGE COMPLIANCE</u>

I CERTIFY that this Motion and Response complies with FRAP 27(d)(2)(A) an (C) and with including the Certificate of Interested persons, contains 5,159 words and complies with the page limits of the respective rules.  In addition, counsel certifies (to the best of his understanding) that the motion complies with the type face and type-style requirements of FRAP 32(a)5 and (a)6 respectively.

Respectfully submitted,
HAYNES LAW, P. A.
_____/s./ *Carlus L. Haynes*_____
CARLUS L. HAYNES, ESQUIRE
Florida Bar Number: 0935611